**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**AMINA MOHAMMAD,**

Plaintiff,

v.

**ANTONY J. BLINKEN[1],** *in his official capacity as United States Secretary of State, et al.*,

Defendants.

Case No. 1:20-cv-03696 (TNM)

## MEMORANDUM OPINION

Amina Mohammad is a U.S. citizen applying for a K-1 visa for her fiancé currently living in Afghanistan. Her initial petition was approved just as U.S. embassies around the world closed in response to the COVID-19 pandemic. Nine months later, Mohammad's application remains pending and her fiancé awaits an interview with the U.S. embassy in Kabul. Mohammad sues various federal officials (collectively, the "Government") claiming this delay is unreasonable. She seeks an order compelling adjudication of the visa application. The Government moves to dismiss the complaint and for summary judgment. And Mohammad moves for partial summary judgment. The Court will grant the Government's summary judgment motion and deny Mohammad's motion because the delay is not unreasonable.

**I.**

Mohammad is a U.S. citizen seeking a K-1 visa for her fiancé, who lives in Afghanistan. Pl.'s Statement of Material Facts ("Pl.'s SOMF") ¶¶ 1–2, ECF No. 8-2. These visas are available

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, Antony J. Blinken substitutes for Michael R. Pompeo as Defendant in this suit.

to aliens who want to marry a U.S. citizen in the United States. Another judge of this district has outlined the process for obtaining one of these "fiancé visas":

> Filing a petition is just the first step in the lengthy, multistep K-1 visa process. The government must then approve the petition and send the application on to the National Visa Center, at which point the application is forwarded to the U.S. embassy or consulate where the alien fiancé(e) lives. A consular officer in that office is responsible for interviewing the alien fiancé(e), reviewing the relevant documents, and requesting a background check. If approved by the officer, a visa is issued to the alien fiancé(e). He or she may then enter the United States and must marry the U.S. citizen indicated in the initial petition within 90 days of entry.

*Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 90 (D.D.C. 2020) (citing Visas for Fiancé(e)s of U.S. Citizens, https://www.uscis.gov/family/family-us-citizens/visas-fiancees-us-citizens) (cleaned up).

The U.S. Citizenship and Immigration Services ("USCIS") approved Mohammad's initial I-129F petition in March 2020. Pl.'s SOMF ¶ 3; Defs.' Statement of Undisputed Material Facts ("Defs.' SOMF") ¶ 2, ECF No. 6-1.[2] Since then, her application has remained pending with the

---

[2] Mohammad ignored the local rules. Along with her opposition, she provided facts that she contends the Government "omitted from [its] statement of material facts." Pl.'s Statement of Material Facts in Opp'n at 1, ECF No. 7-1. But she did not provide a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." LCvR 7(h)(1). The Court will therefore "assume that facts identified by [the Government] in its statement of material facts are admitted." *Id.*; *see SEC v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000) ("If the party opposing the motion fails to comply with this local rule, then the district court is under no obligation to sift through the record and should instead . . . deem as admitted the moving party's facts that are uncontroverted[.]" (cleaned up)).

The Court also rejects Mohammad's argument that the Government violated Local Civil Rule 7(n)(1). *See* Pl.'s Mem. of P. & A. in Opp'n at 6, ECF No. 7. Under this rule, an agency must file "a certified list of the contents of the administrative record within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." LCvR 7(n)(1). The rule does not apply here. Mohammad challenges *inaction*, not action. So "review is not limited to the record as it existed at any single point in time." *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (cleaned up). "Said another way, if an agency fails to act, there is no 'administrative record' for a federal court to review." *Id.*

National Visa Center. Defs.' SOMF ¶¶ 3–4. The National Visa Center will transfer the application to the U.S. embassy in Kabul ("Kabul Embassy") for adjudication once that embassy schedules an interview with Mohammad's fiancé. Decl. of Evangeline Howard ("Howard Decl.") ¶ 9, ECF No. 6-2. Mohammad claims that the delay with the K-1 visa application has caused her medical, emotional, and financial hardship. Aff. of Amina Mohammad ("Mohammad Aff.") ¶¶ 16–24, ECF No. 7-3.

In March 2020—when USCIS approved Mohammad's initial petition—the State Department "suspended all routine visa services worldwide" in response to the COVID-19 pandemic. Howard Decl. ¶ 5. The State Department stopped scheduling new visa interviews and canceled existing interviews "at consular posts worldwide." *Id.* Embassies only offered "mission critical and emergency services to the extent they were able to do so safely." *Id.*

Fast forward four months and U.S. embassies began a "phased resumption of immigrant visa interviews." Defs.' SOMF ¶ 6; Howard Decl. ¶¶ 7–8. As relevant here, the Kabul Embassy will reschedule the interviews of applicants that were canceled during the shutdown. Howard Decl. ¶¶ 8–9. Once complete, it "will resume scheduling new immigrant visa appointments for applications that are documentarily complete." *Id.* ¶ 8. Interviews will be scheduled "in the order that they become documentarily qualified" and there will be no expedited appointments because of limited capacity. *Id.* Still, though, "there is simply not enough processing capacity to accommodate the large backlog of cases at the National Visa Center." *Id.* ¶ 9. And the Kabul Embassy "will have reduced appointment capacity due to the ongoing COVID-19 restrictions in Afghanistan." *Id.*

Mohammad sues the Government under the Administrative Procedure Act ("APA") and the Mandamus Act. *See* Pet. for Writ of Mandamus & Compl. for Inj. Relief ("Pet.") ¶¶ 12–32,

ECF No. 1. She alleges that the Government has "unreasonably and improperly withheld action" on her visa application, and she seeks an order compelling the Government to adjudicate it within 15 days "or as soon as reasonably possible." *Id.* ¶¶ 1, 32; Pet. Claims for Relief at 9.[3] Mohammad also claims that the Controlled Application Review and Resolution Program ("CARRP")—an "internal policy" used to "investigate and adjudicate applications deemed to present potential 'national security concerns,'" Pet. ¶ 35—"intentionally delays the applications of Muslims or those from predominantly-Muslim countries," *id.* ¶ 34. She asserts that her "fiancé is from a predominantly Muslim country" and that "on information and belief," the Government is "intentionally delaying the visa application because of an application of the CARRP program." *Id.* ¶ 37.

The Government moves to dismiss and for summary judgment. Mohammad moves for partial summary judgment on her APA and mandamus claims. Their motions are ripe for disposition.[4]

**II.**

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show the lack of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant has to "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue

---

[3] All page citations refer to the pagination generated by this Court's CM/ECF system.

[4] The Court has jurisdiction under 28 U.S.C. § 1331. The Court rejects Mohammad's request for oral argument on her partial summary judgment motion because a hearing is unnecessary. *See* LCvR 7(f).

of material fact." *Id.* (cleaned up). Then, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up).

At summary judgment, courts "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). But the nonmoving party must establish more than the "mere existence of a scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

**III.**

Mohammad raises three claims that all rest on the same contention: The Government unreasonably delayed adjudication of her fiancé's visa application. *See, e.g.*, Pet. ¶¶ 17, 27, 32, 37.

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. §§ 555(b), 706(1)). The "standard for undue delay under the Mandamus Act . . . is identical to the APA standard." *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020).

"There is no per se rule as to how long is too long to wait for agency action[.]" *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (cleaned up). Courts consider six factors ("*TRAC* Factors") to evaluate unreasonable delay claims:

1. the time agencies take to make decisions must be governed by a rule of reason;
2. when Congress has provided a timetable or other indication of the speed with

which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

3. delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

4. the effect of expediting delayed action on agency activities of a higher or competing priority;

5. the nature and extent of the interests prejudiced by delay; and

6. the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up). These factors are not "ironclad" but offer "useful guidance." *Id.* Addressing an unreasonable delay claim is "ordinarily a complicated and nuanced task requiring consideration of particular facts and circumstances before the court." *Mashpee*, 336 F.3d at 1100.

On the whole, the *TRAC* factors establish that the Government's delay is not unreasonable. Mohammad's claims therefore must fail.

**A.**

The first factor has been called the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). It requires the Court to decide "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). The second *TRAC* factor—whether Congress has provided a timetable—"may supply content for th[e] rule of reason." *TRAC*, 750 F.2d at 80. And the two factors are "typically considered together." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). Both favor the Government here.

"There is no congressional imposed timeline" for processing K-1 visa applications. *Bagherian*, 442 F. Supp. 3d at 95. Mohammad acknowledges as much. *See* Pl.'s Mem. of P. &

A. in Opp'n ("Pl.'s Opp'n") at 7, ECF No. 7.[5] "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). With no "congressionally supplied yardstick, courts typically turn to case law as guide." *Sarlak v. Pompeo*, No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).

And courts "have declined to find a two-year period to be unreasonable as a matter of law." *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (collecting cases). In *Milligan*, for example, the court rejected unreasonable delay challenges to K-1 visa applications where the delays "began eight months ago, in March, when U.S. Embassies and Consulates around the world shut down." 502 F. Supp. 3d at 318. The court held that "[t]his timeline alone provides no basis for judicial intervention." *Id.*

So too here. Mohammad sued nine months after USCIS processed her application in March 2020, just as U.S. embassies around the world shuttered because of COVID-19. *See* Defs.' SOMF ¶ 2; Howard Decl. ¶ 5. Even if the clock started in November 2019 when Mohammad filed her initial I-129F petition, the application is still less than two years old. Either timeline "is not unreasonable as a matter of law, given the circumstances." *Bagherian*, 442 F. Supp. 3d at 95 (holding twenty-five-month delay not unreasonable); *accord Shen v. Pompeo,* No. 20-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (explaining that the first two *TRAC* factors favored government because plaintiff filed the action "less than a year after submitting his application" and it had been "approximately twenty-one months since that date").

---

[5] Mohammad filed a separate brief in support of her partial summary judgment motion that relies on substantially similar arguments and evidence. *See* Pl.'s Mot. for Partial Summ. J., ECF No. 8. The Court cites Mohammad's opposition brief but the same analysis applies to the arguments raised in her partial summary judgment motion.

Mohammad suggests that the Court need not follow these decisions because they involved "complex, fact-intensive determinations" not present here. Pl.'s Opp'n at 7. According to Mohammad, "[a]djudicating K-1 applications is much more straightforward." *Id.* at 8. Her argument misses the mark. The Government does not rely on the complexity of the application to justify the delay. It instead cites the lack of "processing capacity to accommodate the large backlog of cases at the National Visa Center" and the "reduced appointment capacity due to the ongoing COVID-19 restrictions in Afghanistan." Howard Decl. ¶ 9. Whether K-1 visa applications are "straightforward" is thus beside the point. At the very least, these other cases "show that others waiting for immigration benefits face similar delays and thus reinforce the determination" here. *Palakuru v. Renaud*, --- F. Supp. 3d ---, 2021 WL 674162, at *5 n.7 (D.D.C. Feb. 22, 2021).

Mohammad also cites a Notice of Rulemaking from USCIS that lists estimated processing times to adjudicate certain visa petitions. *See* Pl.'s Opp'n at 8–9. She notes, for example, that the I-129F application—the initial petition for a K-1 visa application—"is estimated to take 0.67 adjudication hours to complete," while the I-485 application "is estimated to take 1.63 adjudication hours." *Id.* at 8. Mohammad posits that it is "reasonable to conclude" that "a visa application for a fiancé visa should take approximately the same amount of time as an I-458 application" because they "require similar inquiries." *Id.* at 9.

Mohammad cannot make apple juice with oranges. The State Department, not USCIS, will handle the visa application. *See* Defs.' Reply in Supp. Mot. to Dismiss & Summ. J. at 10, ECF No. 10. USCIS is no longer involved. *See* Defs.' SOMF ¶ 2. So its processing estimates are not the appropriate yardstick with which to measure the work of the State Department, a separate agency. Mohammad admits that no other timeline or authority establishes comparable

processing times for the State Department. *See* Pl.'s Opp'n at 9 ("[T]he State Department has not published similar statistics[.]"). Her speculation that the application "should take approximately the same amount of time" cannot survive summary judgment. *Accord Atanus v. Sebelius*, 652 F. Supp. 2d 4, 10 (D.D.C. 2009) ("Mere speculation is not enough to survive summary judgment.").

Even if the Court considered USCIS estimates, they do not move the needle for Mohammad. The time needed to adjudicate a *single* visa application has no bearing here. Recall that Mohammad's case is not the source of the delay. It is the "large backlog of immigrant visa cases" pending at the Kabul Embassy, which has reduced appointment capacity to handle them. *See* Howard Decl. ¶ 9. Mohammad's application may take less than two hours to complete. But there are other pending applications. And the Government is scheduling interviews "in the order that they become documentarily qualified." *Id.* ¶ 8. Even something as simple as buying a concert ticket may take hours if there are hundreds of people in line ahead of you.

Mohammad also suggests that 8 U.S.C. § 1571(b) is the relevant timetable to assess whether the Government's delay is unreasonable. Pl.'s Opp'n at 7. This provision says that "[i]t is the sense of Congress that the processing of any immigration benefit application should be completed not later than 180 days after the initial filing of the application[.]" 8 U.S.C. § 1571(b). But this language is "best interpreted as nonbinding." *Palakuru*, --- F. Supp. 3d ---, 2021 WL 674162, at *4. "Several courts, including the D.C. Circuit, have recognized that a sense of Congress resolution is not law." *Id.* (cleaned up) (citing cases). And a contrary holding would ignore the overwhelming caselaw rejecting unreasonable delay challenges for applications that remained pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b). *See, e.g.*, *Kangarloo*, 480 F. Supp. 3d at 141 ("[Plaintiff] has been waiting nearly two

years, but that amount of time is in line with other decisions that have not found unreasonable delay.”).

Even if 8 U.S.C. § 1571(b) offered some “indication of the speed with which [Congress] expects the agency to proceed,” *TRAC*, 750 F.2d at 80, the Court’s analysis remains the same. And the first two *TRAC* factors still favor the Government. *Accord Palakuru*, --- F. Supp. 3d ---, 2021 WL 674162, at *4–5.

**B.**

The Court next considers the fourth *TRAC* factor, “the effect of expediting delayed action on agency activities of a higher or competing priority.” *TRAC*, 750 F.2d at 80. “This factor carries the greatest weight in many cases[.]” *Milligan*, 502 F. Supp. at 319. Indeed, the Court may deny relief under this factor alone “where a judicial order putting [Mohammad] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.” *Mashpee*, 336 F.3d at 1100 (cleaned up).

Such is the case here. Mohammad requests an order compelling the Government to adjudicate her fiancé’s visa application within 15 days “or as soon as reasonably possible.” *See* Pet. Claims for Relief at 9; *see also* Pet. ¶ 32. But this relief would allow Mohammad to skip the line and “simply move[] all others back one space and produce[] no net gain.” *Mashpee*, 336 F.3d at 1100 (cleaned up). “While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities.” *Tate v. Pompeo*, --- F. Supp. 3d ---, 2021 WL 148394, at *11 (D.D.C. Jan. 16, 2021). The Court finds no reason to insert itself into the immigration space, where federal agencies enjoy wide discretion. *Cf. In re Barr Lab’ys*, 930

F.2d 72, 76 (D.C. Cir. 1991) ("Such budget flexibility as Congress has allowed is not for us to hijack.").

Mohammad says that processing in her case "has been atypical" because the "National Visa Center blames the embassy for the case being stalled, while the embassy blames the National Visa Center." Pl.'s Opp'n at 9; *see also* Mohammad Aff. ¶¶ 13–15. She claims that she received "confusing responses" and "conflicting information" in several communications with both.[6] Mohammad Aff. ¶¶ 13, 15. The Court disagrees.

Her conversations instead support the Government's justification for the delay. Mohammad learned that her application had not yet been forwarded to the Kabul Embassy and that the National Visa Center could not forward her application until that embassy requested it. Mohammad Aff. ¶ 13. The Government says the same. *See* Howard Decl. ¶ 9. At different points, Mohammad also was told: (1) that the Kabul Embassy was closed, (2) that the Kabul Embassy was open but the visa department was closed and not conducting in-person interviews, and then, (3) that the Kabul Embassy was conducting interviews and processing visas. Mohammad Aff. ¶ 13. This too tracks the Government's representations. *See* Howard Decl. ¶¶ 5–9 (outlining that U.S. embassies were closed but providing emergency services and then that they began "a phased resumption of immigrant visa interviews"). Mohammad's conversations—even if "confusing" or "conflicting" to her, Mohammad Aff. ¶¶ 13, 15—are not "unique considerations" that warrant moving her application to the front, *accord Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 105 (D.D.C. 2020) ("[I]t is notable that

---

6 Similarly, Mohammad points to automated email responses she received from the Kabul Embassy, informing her that (1) it is not working because of the COVID-19 pandemic, (2) her case had not been sent from the National Visa Center, and (3) the Kabul Embassy is "conducting phased resumption of interviews." Mohammad Aff. ¶ 14.

plaintiff does not point to any unique considerations that warrant an expedited review of his [visa] petition; nor does he contend that the agency has treated him unfairly, or differently[.]"). They instead highlight a fluid situation that is not unreasonable in the middle of a pandemic.

Mohammad also notes that the Kabul Embassy "continues to process K-1 visa applications, issuing a total of 29 visas in January 2021, 16 of which were K-1 visas." Pl.'s Opp'n at 10. Again, though, this evidence does not help Mohammad. The Government has not suggested that *no* applications are currently being processed. The issue is that "there is simply not enough processing capacity to accommodate the large backlog of cases." Howard Decl. ¶ 9; *accord Tate*, --- F. Supp. 3d ---, 2021 WL 148394, at *11 ("Defendants face an extraordinary backlog of visas across the world[.]"). That the Kabul Embassy has processed some applications shows that government officials are not "twiddling their thumbs" while Mohammad's application remains pending. *In re Barr Laby's*, 930 F.2d at 75. Mohammad's case is not entitled to a "super-priority." *Id.* at 76.

This factor alone may be enough for the Court to reject Mohammad's unreasonable delay claims. *Mashpee*, 336 F.3d at 1100 (cleaned up). But the remaining *TRAC* factors also favor the Government.

**C.**

*TRAC* factors three and five look to "the interests prejudiced by delay," including how delays affect "human health and welfare." *TRAC*, 750 F.2d at 80. Mohammad claims that the Government's delay has caused her financial, medical, and emotional hardship. *See* Pl.'s Opp'n at 10 (citing Mohammad Aff. ¶¶ 16–23). The Court is not unsympathetic to Mohammad's difficulties. But the Court is also mindful that "many others" face similarly difficult circumstances as they await adjudication of their visa applications. *Palakuru*, --- F. Supp. 3d ---,

2021 WL 674162, at *6; *accord Tate*, --- F. Supp. 3d ---, 2021 WL 148394, at *12 ("Many other individuals are in similarly trying circumstances[.]"). In any event, the difficulties Mohammad raises stem from her and her fiancé's decision to start their family before their marriage that awaits the K-1 visa. They cannot blame the Government for the repercussions of their own choices. The Court thus does not find in their favor on these factors.

Even if these factors favored Mohammad, "[t]hey are not enough to overcome the other factors that weigh strongly" for the Government. *Palakuru*, --- F. Supp. 3d ---, 2021 WL 674162, at *6; *accord Bagherian*, 442 F. Supp. 3d at 95–96 (acknowledging plaintiff's "interest in marrying and living together in the United States" with fiancé but holding 25-month delay not unreasonable). "Balancing the relevant factors, the government's interests in balancing its own priorities and determining how to allocate scarce resources in a global pandemic outweigh [Mohammad's] interests in immediate adjudication" of her visa application. *Tate*, --- F. Supp. 3d ---, 2021 WL 148394, at *12 (cleaned up).

**D.**

Agency bad faith—the sixth and final *TRAC* factor—plays no part here. The Court can find unreasonable delay even without "any impropriety lurking behind agency lassitude." *TRAC*, 750 F.2d at 80. But Mohammad "is not alleging bad faith." Pl.'s Opp'n at 10. She instead recycles her contention that the Government's treatment of her application is "nonsensical" because the National Visa Center and Kabul Embassy "essentially blame each other." *Id.* at 10–11. Mohammad suggests a "severe lack of communication" between the two. *Id.* at 11.

The Court has rejected this argument. *See supra* Section III.B. As explained, the evidence Mohammad relies on does not establish that the Government treated her differently than other applicants. It shows the Government's efforts to balance the "health and safety of

applicants and staff" with the need to address the "large backlog of immigrant visa cases." Howard Decl. ¶¶ 8–9.

*          *          *

Applying the *TRAC* factors, the Government has not unreasonably delayed adjudication of Mohammad's visa application for her fiancé. Mohammad's wait time—while not insignificant to her—pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district. "[D]elays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up). And Mohammad provides no reason that the Court should allow her to skip ahead in the line.

The Government is thus entitled to summary judgment.[7] *Accord Kangarloo,* 480 F. Supp. 3d at 142 ("Because [plaintiff's] APA claim fails, mandamus is not available.").

**IV.**

For these reasons, the Court will grant the Government's summary judgment motion and deny Plaintiff's partial motion for summary judgment. A separate Order will issue.

2021.07.08
14:52:20 -04'00'

Dated: July 8, 2021 TREVOR N. McFADDEN, U.S.D.J.

---

[7] Given the Court's unreasonable delay holding, it need not reach the separate argument that Mohammad improperly named some federal officials as Defendants. *See* Defs.' Mot. Dismiss & Summ. J. at 15–16, ECF No. 6. It also need not consider Mohammad's challenge that the Government is using CARRP to "intentionally delay[]" the visa application because the Court has found no unreasonable delay. *See* Pet. ¶ 37.

Even if the Court construed the CARRP claim as one that did not hinge on unreasonable delay, it still would not survive because Mohammad provides no facts to support it. *Accord Ghadami*, 2020 WL 1308376, at *6 (dismissing similar claim that "on information and belief defendants [were] intentionally delaying" the visa application "pursuant to the CARRP program" because plaintiffs did not "set forth any factual allegations to support that conclusion" (cleaned up)).